United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good afternoon. Our first case for today is 2020-50343 United States versus Eureka Huerta. You may proceed with your argument. May it please the court. Mr. Durbin, given that the here and now has a new theory to support the two K two point one B six B enhancement. I want to point out to the court this panel exactly, in my opinion, what the government is asking this court to do. The government is asking this court to find facts which were not before the district court and which the district court didn't find. First one, uh, the court is asking for this court to find the Mr Badia and Miss Huerta entered into a joint undertaking. Excuse me. Undertaking to commit this purported other felony offense. Number two, Miss Huerta's agreement as to this joint undertaking, and this is a quote from the government's brief, was a joint undertaking with co defendant Badia to obtain a distribution quantity of methamphetamine. Fact number three, Miss Huerta either knew that this substance issue was methamphetamine, or if she didn't know it, she knew that whatever the substance was is on the federal drug schedules. Fact number four, Miss Huerta's possession of the firearm, and this is a quote from the government's brief, was to facilitate a drug transaction that was planned, but that did not yet occurred. The fifth fact that I have here is that this is tempted meeting between Badia Huerta and Mr Garza, who we never meet in this case, which never took place, was somehow an act in furtherance of the joint agreement between this Huerta and Mr Badia. Now, in my opinion, I would suggest there at least five reasons why the district court couldn't found any of these facts, and therefore this panel shouldn't find any of these facts either. First reason the only place in the record where there's any reference of this planned meeting between Miss Badia, excuse me, Mr Badia Huerta and Mr Garza was that the detention hearing the detention hearing was before the magistrate judge, not the district judge. There's nothing in the record suggests the district judge knew anything about or had anything on his radar screen regarding the content of what went on at the detention here. Number two, even if the district court had conducted the excuse me, conducted the detention hearing, the testimony of the detention hearing wouldn't support the finding that the government wants it to support. Uh, the testimony that's relevant was from the Odessa narcotics detective, Detective Rogers, and he was specifically asked because there was a question about whether this meeting, according to Mr Badia, was it didn't have anything to do with drugs or did it have to do with a car? Okay, that went back and forth. First, he said car. Then he said drugs. Then he said car. So the detective is asked, Do you know if any of this was a part of a guns in exchange for any drugs? Detective Rogers? No, sir. So the only testimony at the detention hearing would be, uh, would would be towards a finding that we don't know. There's there's nothing here that says this has anything to do with drugs. Okay. Uh, number three, the district court made no findings as to the scope of Miss Huerta's agreement with Mr Badia regarding methamphetamine against. That's that's the government's theory since at least 2015 when one book when one B 1.3 was amended there, there's a very clear order of steps that a district court has to go through to determine whether conduct is relevant conduct under a jointly undertaken criminal activity theory. Number one, and this has to be in this order with is it within the scope of the jointly undertaken criminal activity? And again, the application notes that that's the very first consideration. You don't to get to in furtherance. You don't get to, uh, reasonably foreseeable until you get to. Is it within the scope? Okay. And I would point that the reason is significant. The government's brief on page 15 sites to United States. The Rice 11th Circuit case. Uh, but that case was a 2011 case, and the finding in that case that the government relies on was based on reasonable foreseeability. They never got to. Was it within the scoring? Excuse me, the scope of jointly undertaken criminal activity. But that's what this court is being asked to do by the government. You've got to start with. Was it within the agreement? Not with not whether it was reasonably foreseeable or in furtherance. You gotta go in that order and as part and parcel of whether it was within the agreement. If you've got a conspiracy, then part of that conspiracy to distribute requires knowledge on the part of the co conspirators of those who are part of this agreement. Well, after the McFadden case, I think was 2016. There's two ways that you can establish that a co conspirator has knowledge. Number one, either the defendant didn't know the name of the substance, but knew it was on the federal drug schedules or actually didn't know the name of the substance. There's absolutely nothing in this record that would establish that Miss Wirtek had knowledge under either one of those methods. Okay, number four again. One of the one of two K 2.1 B six B is in close proximity to drugs. Were the guns in close proximity to drugs? Well, under this new theory, Mr Badia and Miss Wirtek were never in actual or constructive possession of any methamphetamine. The only methamphetamine around was possessed by Miss Velarde, and the government appears to have abandoned that theory. And I addressed that theory as best I could in my initial brief as to why that theory doesn't work. Okay, and I'm not gonna, you know, I'm not gonna repeat that. But if there's no if there's guns and no drugs, then you don't get a close proximity. You can't. You can't do it under close proximity. My authority for that is United States. B. C. B. 58 F. 3rd 1 61 5th Circuit case. The government obviously makes no attempt to, uh, uh, advantage theory under the two grams of methamphetamine that Mr Badia had on his person or the under identified substance that, uh, Miss Wirtek had on this dollar bill. Possession amounts won't support the enhancement again. My authority for that is United States. B. Jeffries 587 F 36 90 United States B. Caldwell 7 70 Federal Appendix 1 75. Can you help us? How do we know when something's a possession amount? Well, I okay. I don't know that there's a line anywhere, but I think we can say that two grams, at least in Texas, two grams is possession amount. We don't know the other substance. I don't. I don't know that any case says this is the line. The cases I've read say this one's over or this one's under. And, you know, so I don't know. The short answer is I don't know the answer. Okay, I've been trying to get all the points because you've had a lot of points in rapid fire, and I'm sorry that if I may have missed something that you clearly already told us. But, um, okay. The fact that he asked her to go with their him and bring his her gun, right? That's and you can't assume that he knew it was going for a drug meeting, right? Well, well, was it for drugs or was it for the car again? The only testimony about that came from the detention hearing, which the district judge never heard. And the only testimony at the detention hearing from the detective was ambivalent. He had no way. And by the way, the detective didn't talk to Miss Huerta or Mr. Bedea. He only interviewed the arresting officers and in his opinion for the district court to rely on the detention hearing information. Even if the district court didn't hear it, it would if we knew if it would. Absolutely. If we knew that he that the district judge did rely on it. Absolutely. Uh, just like it would be proper for the district judge to cam or body cam stuff that that is discussed in this case if it had been introduced into evidence, but it never was. It's not part of the record. So my argument is that if we don't know that the district judge had it within his memory bank, consider it's not fair or it's not proper for this judge to assume that he did. That would just be my argument. Um, and number five. Um, again, as I've argued in my reply brief, given that this is a new theory, it's reviewed for plain air and the government's sites to the record. I mean, for clear air for air to be playing, it's got to be clear. Now the government, everything the government relies on, asks this court to make an inference that's not necessarily obvious at all. For example, the is carrying on his person. More than $9000 cash is consistent with the drug dealing objectively intended meeting. Okay, it's consistent with. It's not obvious, though. Number two. As Medea advised police officers because where toe was his girlfriend, she was cognizant of this entire situation with the Gonzales motel meeting. Well, that's a real stretch. I mean, maybe she was. Maybe not. She certainly denied that she was. Next one. Where does close association with the Diaz? His girlfriend supports her position, her participation in but Diaz drug dealing objections. You're a girlfriend. Therefore, whatever he's doing, you're doing. That's that's that's okay. Maybe you can infer that, but it's not obvious where toe who had been unemployed for more than one year was no stranger to drug possession. Okay, that doesn't that doesn't make this agreement obvious in any way. Maybe. Okay. And then it says, and this is I've already addressed this kind of where toes and the Diaz admissions largely corroborated by video recordings established their coordinated movements. Maybe, but we never the recordings were never introduced. They're never out. They're not in evidence. And so my argument is, if the district court didn't have him for him, it's it's not proper. I don't think I'm not. I'm suggesting this court can't take judicial notice and find out what's on them and then make a decision that that would be my argument. Okay, a couple of words now about the second. Um, the second issue here, and the government, uh, filed a supplemental, uh, notice of these two recent cases on the Fifth Circuit having to do with improper delegation. Uh, interesting background of these cases. They both came out initially on, um, believe November 27th or October 27th. And, uh, Martinez was published. The Del Guadalupe was not. Uh, they were utterly at odds with each other. In my opinion, the appellate attorney from the Del Guadalupe while the petition for panel re hearing say, you guys, these are these are just they say opposite things. One says you can't order. You can't delegate in pay to a probation officer the decision whether the treatment is going to be inpatient or outpatient. Uh, you're aware of how that these were re issued and harmonization. Um, assume we're aware of that. Can you cut to the chase because you're running out of time? Yes, when they were re issued the Medellin Guadalupe opinion, basically, I mean, they both affirmed everything they said before, but the dwell the Medellin Guadalupe opinion added this, which wasn't in their first opinion, and it had to do with the fact that Martinez sentence was 10 months. Medellin Guadalupe's, uh, was 10 years. Okay. Um, due to the length of Del Guadalupe's term, and I'm reading from the Del Guadalupe opinion, a court cannot predict what the need for substance abuse treatment during supervised release will be. If upon his release nearly a decade from now, Medellin Guadalupe's disagrees with the outpatient inpatient outpatient determination, the district court will have the final say over the decision. That stands for the proposition to me that any appellant who looks at this or any anybody who's in prison and says, Well, if I didn't argue it at the district court didn't appeal it, but I don't like it, and I got a sentence over 10 years, I can still take it up. Fifth Circuit's previously says, No, you can't do that. And I'm reading here. I'll hustle up. This is, um, can you just tell us whether or not there's something okay in the fifth circuit? If there's okay, I'll cite. I'll cite the case. I'm not asking what the case law is. I'm asking what has been delegated that you are objecting to. Okay. I'm saying that a delegation under Medellin Guadalupe is bad law because because it's inconsistent with prior Fifth Circuit caseload. But what has been delegated in your case that you object to? That's what I think. The probation officer still has the right under Medellin Guadalupe to delegate inpatient or outpatient treatment. No, that's improper issue in your case. Well, there's inpatient outpatient issue. There's no discussion of inpatient outpatient. Is there? Okay. Okay, I'll finish my Can I finish my sentence? And now? Yes, sir. I'm trying to figure this out. I'm not trying to be argumentative. In Martinez, the condition specifically said that the probation officer could delegate inpatient or outpatient. I'm really familiar with Martinez. Yes, ma'am. And I believe you were part of the opinion. I understand it. I did Mr Guadalupe's deal. That's why I'm a his didn't say that. But the general terms of the authority given to the probation officer would allow the probation officer to do that, in my opinion. And I'm arguing that's improper. But there's no there's the district court didn't say that they're letting the probation officer in the future do anything like that, right? You're just imagining that that might happen in some future day. I'm just trying to be is that right? The language of the condition allows the probation officer to deter. First of all, he's gonna treatments order. Right. Is it gonna be inpatient or outpatient? The other language in the opinion and I again, I cut me off at any time because I know I'm over here. It says, uh, and I right. But there's been no inpatient treatment ordered in this case, right? Specifically, no, no delegation. No, you're right. Probation officer to make a determination in in those other cases, there was a delegation to make the determination. In this case, there's no delegation of that specifically. You're right. Not specific. Okay, so there's no problem as long as the district court doesn't delegate that to the probation officer. What if the probation officer does it on her own? If then you can always go back and say that wasn't in the judgment. Well, and I'm gonna say under the prior Fifth Circuit case law, if you don't raise it, it's sentencing or on appeal. You can't raise it on a revocation hearing here today, sir. And in your brief. Thank you. Um, I think we have your argument and you set time for rebuttal. And Mr Durbin, let's hear from you about this. Um, please. And your argument. All right. You'd like me to start with the application of the guideline? Yes, sir. I think that's the primary argument in the case. Okay, I, uh, I read the record, and the first question that I had as I picked this up was all right. What? What is the other felony offense that's at work here? We've got possession of a firearm by Miss Wertha. In fact, she possessed two firearms. As I read the record, she possessed each of them at different times. Um, the circumstance. And so the guideline actually, um, allows for application of this under two circumstances. And as I read it, one is if the defendant used or possessed the firearm in connection with another felony offense. I think that means a felony offense that the defendant commits. And then the second clause in it possess permits application of it. If the defendant possessed it with knowledge, intent or reason to believe that it would be possessed or used in connection with another felony. I think the record here supports both of those. But I think that the district court made its determination on the first that is based on a finding or a determination that Miss Wertha was in a conspiracy with others. The scope of the conspiracy was not real clear. But the probation officers, the pre sentence report in response to the found that where it does co defendant who is by the was in possession of almost $10,000. And Bill, are they? There's another player here. But are they was in possession of 81.6 grams of methamphetamine. These are items are indicative of drug trafficking. The factual circumstances as I see them in the record are, and it includes testimony by an officer of the O. P. D. At at the at the detention hearing is that they got a call from the Super Eight Motel. They showed up to the motel. They got a call for person with a gun. They found four people outside the motel that appeared to be together. And Mr Wertha dropped a gun and the officer heard it. Ms Villar they who is charged in a separate related case. She is not charged in this case, but she And then Ms, um, where the was found holding an AK 47 pistol, um, automatic or semi automatic. And there was a fourth person there, Marquez, who had five grams of methamphetamine. Now, according to the testimony of the officer during the detention hearing, he interviewed by the and Badia said he went to the Super Eight Motel to meet with a guy named Alan Gonzalez. And Villar they in that related case. It's number 2 49. I believe in the in the district court that they were both indicted on the same day. These two were indicted on guns. The others were indicted on a methamphetamine conspiracy. First, he says he was going about a car. Then he says now he was going to get £15 of meth from Alan Gonzalez. And then he kind of goes back to Well, no, there's a car story. Um, both Wertha and Badia identify her as Badia's girlfriend. And then later, they both say that she wasn't. Um, and Frank, but he has said, or she said that, but he had told her, Let's go to the Super Great Motel. You're going to be armed. And he gave her the six hour pistol. And then after they were leaving, he gave her they exchanged guns, and she ended up with the AK 47. Um, they went to the room where Gonzalez supposedly was. We don't know why they didn't get to see him, but they didn't. But as they were leaving, the police showed up. So there's four people. Yes, ma'am. Couple of questions. Yes. Posting Council says that you're that you said you've been signed from the PSR. It says that they're relying on things from a hearing a detention hearing as part of this. That is not part of the record before the district court. Can you address that? And then my second question is, how do you What is the evidence that Ms Werta actually knew even that this was some sort of drug deal going on? And just the fact that she's a girlfriend doesn't establish that. That's right. I agree with that. As far as answer both of those questions, the detention hearing being part of the record. Um, well, it's part of the record on appeal. I can't test to what the district court may or may not have read. Um, but I think that as part of the record on appeal, we can assume that the district court at the time that he was making its decisions. Did he have the actual transcript of the detention here? Have knowledge of what had happened. Could the district court have relied upon that? And did the district court rely upon that? I believe so, because during the sentencing hearing at page 1 11 of the record, um, there was some back and forth, and the district court said the response by the probation officer is certainly telling Ms Werta and Miss Villar. They one of those one of the four of them worth who were there are co defendants in the possession of this money, which is almost $10,000 and possession of some 81.5 grams of methamphetamine, which certainly are indicative of drug trafficking. And there is a firearm. And, uh, Miss Weta's counsel objected. Well, they're not charged together. And the judge's response was, But that doesn't keep Miss Villar. They and Miss Weta from being co conspirators. Correct. So I believe the district court was aware of the circumstances that were going on at the time the police showed up at the at the Super eight motel, because I believe this indicates that the district court's determination in this particular matter was based on the district court's that Miss Weta participated in a drug conspiracy and that in connection with that she possessed this firearm and accordingly and there were 81 grams of methamphetamine found that Miss Villar they had disposed off during the time that the police showed up. And there was reference to it's not in the record, but it's referenced as information that the probation officer, I believe, looked at as well as, um, offense reports that these people were seen together as though they were operating or they were. They were coordinating or cooperating, but they somehow knew each other at the motel. And from those circumstances, I think that was the basis for the district court's determination that there was a conspiracy. Now, as far as Miss Weta's knowledge, um, the the transcript of the, um, of the detention hearing does not say that she knew that there were drugs. We don't have that. She didn't have drugs on them. What we do have, though, is she shows up with Mr Badia at the Super eight motel. Mr Badia is going to do. He's looking into a drug transaction. Look for £15 of meth that he hasn't received, and he tells her and you're going to carry a gun. Now, I doubt that she was going or under the impression that she was going to look for cars. That's not usually the way used cars are purchased, and you usually don't need two weapons to purchase a car at a motel. Mr Badia told the police when interviewed. He first gave this nonsense about the car, which I think the court could certainly say that's not credible. He's trying to make up a story, and it came the truth. He told the police he was going for £15 of methamphetamine. Well, if he told the police, I think it's a fair inference by the district court that he told Miss Weta as well. And Miss Weta was not the first time at this kind of a dance. She's got a history. She was. She was convicted of a drug offense about a year or two years ago, and she was arrested in a motel room with drugs and a firearm. And sometime after that, she was involved in another case that the charges are still pending. She was in a car that fled in a police chase, and the car had drugs, a gun and a digital scale. So Miss Weta is not somebody who has no idea where she was or doesn't understand what the circumstances were. And the question here is whether the district court's finding on this was clear error or whether his finding was plausible based on the record as a whole. And I submit to the court that based on these circumstances, the district court's determination that she was involved in a conspiracy, at least by a preponderance of evidence and what had that gun in connection with that conspiracy. I believe the district court's findings should be upheld. It should be affirmed. I also think and I don't want to change horses again, but but I also think that all of those facts also clearly established that she had reason to believe that that gun was a drug conspiracy. And I think the court can uphold the district court on any basis that's in the record. And I think that's that there's sufficient information to to support the district court. What we had is guns, a lot of money, drugs at the motel. Um, and under those circumstances, the district court made the determination that those guns were in connection with a felony drug offense. And based on her background and the circumstances, she knew enough to be held accountable. So I think I submit to the court that the district court's finding was not clearly erroneous. Oh, I'm turning to the issue of the super. I think I did. I answer both of your questions. Judge. You're right. Yes, sir. I think that you did. Um, I'm just other than her presence, the that the detective told someone else after he was caught what he was doing. I mean, her employee, you know, her colleague, Mr. But do you told somebody else told Detective Rogers? But but it's kind of plus her her background and experience. I don't. Well, I'm not gonna tell you that it would be sufficient to convict her of a conspiracy beyond a reasonable doubt. That's not the question before us, and that would be a tough case. I think that's probably the reason she was charged with a firearms offense and not charged in the drug conspiracy. But but I think that those circumstances together with her background on I think her her her criminal history and the circumstances that are set forth in the pre sentence report from those the district court could reasonably find. She wasn't there with a gun at the motel with Mr Badia and with these other people, one of whom had about three ounces of to be held accountable under this particular guideline. And the district court's finding was not clear air under the surface. There's not evidence that she was under the control of him. The testimony or her statement, as I understand it, was she had known him for about two weeks and had been messing around with him. But she had a full time. She had a regular boyfriend, but she acknowledged that she told police that night that he was her boyfriend. But that wasn't true. They'd known each other for about two weeks, and they were messing around. Okay, did you have anything further on that point? Or maybe when my colleagues has a question, I believe that I believe that covers it. What I've got the record is is not lengthy, and it is what it is. Um, the on the supervised release. Um, I don't have a whole lot to add to it. Um, I'm not real sure what what the impermissible delegation was. Um, I think that he's concerned that an impermissible delegation will occur in the future. Well, you know, I've found that there will be that the probation officer will eventually decide to go inpatient, and he wants to make sure he can't get that probation officer can't do that in the future. You agree that you can't in the future do that. If they did try to do that in the future, and it was an improper delegation, they could raise that at some future time. I think they could, Judge. And there is my trouble with this is the way I understand it would probably operate. She's got a 50 believe a 52 month sentence. She can be in the Bureau of Prisons. I think it's very likely that she'll have drug abuse treatment in the Bureau of Prisons, and there's very likely to be a question when she comes out. Does she need further drug abuse treatment? I would assume that if she's had treatment and doesn't indicate that there's further need for it, the probation officer is gonna at some point recommend. Okay, you don't need any more of this right now. Um, I also assume that the probation officer is gonna sit down with her and say, Okay, well, I think that outpatient is gonna be fine. It may say inpatient may be fine if she agrees with him. Is that an improper delegation? If she disagrees with him, she's got a means for getting it before the district court. Um, that is she district court defers to the probation officer without making his or her own decision. Then that's a problem. Well, I think if she says no, I'm not going inpatient. Then the probation officer has to take it to the district court. It has to get there. I think it's clear that this is what's what can be delegated and what cannot. And I don't think it's something else that you wish to say, Mr Durbin. That is all I have, Your Honor. Count. Uh, did any of my colleagues have a question for Mr Durbin? Okay, I think we have your argument, sir. Thank you, Jerry. You save time for rebuttal. Yes, ma'am. I have four comments. First of all, just on the whether, uh, Miss Werther's getting drug treatment in prison, given that there are guns involved in this offense. I don't know this, but I'm gonna guess she's not eligible. Uh, moving back now. I maybe I understood misunderstood Mr Urban, but I thought I understood him to say that the district court made a finding that Miss Werther and Mr Badia were involved in a joint agreement involving drugs. Now, if he didn't say that great, I just misunderstood him. But I don't see that anywhere. That was never before the court. Uh, and as to it sounds like the government is backing up now and relying some on this Velarde testimony. But the government in its brief said, uh, and this is on page 23 on the basis of where it is own relevant conduct, irrespective of the largest criminal involvement or the proximity of where it is firearm to the methamphetamine Velarde possessed. The enhancement applies. That sounds awful close to an abandonment to me again. Obviously, that's a question of offer for this court to decide. So, uh, you know, I just I it's not clear to me why he would want to back up and rely on that when he's just abused himself of that theory earlier. Last but not least, and this is this is important. Uh, Mr Durbin read read from two K 2.1 B six and he read and as if he this is a possible grounds to rely on for upholding this finding. Okay, and I'm gonna read be in its entirety. If the defendant used or possessed any firearm or ammunition would be in connection with another felony offense or and this is this is a significant part or possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe it would be used or possessed in connection with another felony offense. The theory relied upon by the government is the first part. The only time it's ever been mentioned. The second part is by Mr Durbin today, and that second part doesn't have anything to do with the facts of this case. That has to do with the situation or an individual transfers guns to another person, typically to be transferred to somebody else. And the Martinez case that the government sites in his brief addresses that. But that case is in opposite to this case for the in my opinion, for the reasons that I've just suggested. And I think that's I think that's, uh, I think that's reinforced by the application notes here. An application note 14 application 14 specifically addresses drug trafficking in the case of drug drug trafficking offense in which the firearm is found in close proximity to drugs, drug manufacturing materials or drug paraphernalia. Okay, this there's nothing in this application note that has anything to do with the reason believe reason to believe language from that other provision. This, in my opinion, is brand new. This is a new argument that that has nothing to do with the facts of this case, and that, frankly, the government is presenting it for the first time at oral argument. So other than that, those are my only comments. Well, I believe we have your argument. Um, and hearing no further questions, I think the case is submitted, and we appreciate you both appearing today virtually. So we that we conduct this argument. Thank you.